UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-37-DLB

REGINA LEMASTER                                                                                              PLAINTIFF

vs.                                      **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                  DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Regina Lemaster protectively filed an application for supplemental security income (SSI) payments on December 27, 2001. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on March 31, 2003, in Prestonsburg, Kentucky; a supplemental hearing was held on November 3, 2003. On November 26, 2003, ALJ William H. Gitlow issued a denial decision, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for further review by letter dated January 25, 2006. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

1

Plaintiff, who was 26 years old at the time of the initial hearing, has a high school education and received vocational training as a certified nurse's assistant. She alleges an inability to work beginning on December 20, 2001 due to severe back pain, and 3 "very bad" discs and some "tears" in her lower back, which she sustained in a car accident. At the hearing(s) before the ALJ, Plaintiff also indicated that the pain in her back, which she described as sharp and constant, is located below the belt line, on the left side, and radiates down her legs; the pain is aggravated by prolonged sitting, standing, or walking; she lays down several times throughout the day, and takes Methadone to relieve the pain; she does not do the home exercise program that her doctor recommended, nor has she pursued physical therapy, injections, or epidural blocks; and she can walk approximately 50 feet, stand for 15 minutes, sit for 30 minutes, and lift no more than 20 pounds.

Having exhausted her administrative remedies, Plaintiff filed the instant suit on February 9, 2006. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16). At Steps 2 and 3, the ALJ found that Plaintiff's back impairment is severe, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 16). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a significant range of light work. (Tr. 18). Specifically, the ALJ found that Plaintiff can:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, with pushing/pulling only to those weight limits; stand and/or walk six hours total in an eight-hour workday, two hours without interruption; and sit six hours total in an eight-hour workday, three hours without interruption. Non-exertionally, she may only occasionally climb, stoop, kneel or crawl; and

should never climb ladders/ropes/scaffolds, balance or crouch. She should avoid exposure to vibration.

(Tr. 18).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a gas station cashier, manager, or daycare worker. (Tr. 18). At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform despite her limitations, including hand packer, office clerk, assembler, and order clerk. (Tr. 19). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ should have re-contacted her treating physician, Dr. Charles L. Smith, to determine whether additional information was readily available, pursuant to 20 C.F.R. § 416.912(e)(1). According to Plaintiff, the ALJ's error in this regard has heightened vocational importance in light of the VE's testimony that an individual with the exertional limitations imposed by Dr. Smith would be precluded from performing any work.[1] Specifically, Dr. Smith opined that Plaintiff's

---

[1] In her motion, Plaintiff also attempts to distinguish the Sixth Circuit's opinion in *Littlepage v. Chater*, No. 96-6618, 134 F.3d 371 (6th Cir. 1998) (Table decision, text available on Westlaw). In *Littlepage*, the ALJ discounted a mental capacity assessment provided by the claimant's treating physician because it appeared that it was altered. *Id*. at *2. The ALJ also noted that the medical assessment form did not comport with the level of functioning indicated in the doctor's office visit notes. *Id*. For these reasons, the ALJ discounted the doctor's written forms, but she specifically stated that she prepared her Psychiatric Review Technique Form in a fashion consistent with his treatment notes. *Id*.

The district court noted that the ALJ identified a conflict and resolved it by discounting the doctor's report, and by relying instead upon the doctor's actual treatment notes. *Id*. at *3. The district court also concluded that the ALJ was not required to re-contact the doctor, in view of the

"[a]ctivity restrictions ... include no work or lifting." (Tr. 183-85). In response, the Commissioner argues that there was no need to re-contact Dr. Smith because the record contained sufficient evidence for the ALJ to make a decision. The Commissioner also argues that the ALJ properly rejected Dr. Smith's functional capacity assessment, as it was totally inconsistent with Plaintiff's mild clinical signs and modest MRI findings.

Both parties agree that an ALJ's duty to recontact a treating physician is governed by 20 C.F.R. § 416.912(e). That regulation states:

> *When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled*, *we will need additional information to reach a determination or a decision*. To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. *We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

---

fact that all of his treatment notes were already in the record and were used to make a determination regarding the claimant's mental impairment. *Id*. The Sixth Circuit agreed. *Littlepage*, 134 F.3d 371,.at *4.

Plaintiff attempts to distinguish *Littlepage* by arguing that ALJ Gitlow failed to "specifically state that he prepared his limitations (residual functional capacity) based on Dr. Smith's treatment notes." (Doc. #9). The Court finds this distinction trivial, as the ALJ in this case noted the apparent inconsistency between Dr. Smith's functional capacity assessment and treatment notes, and rejected the former in favor of the latter, thereby obviating the need to recontact Dr. Smith for additional information.

5

> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

(emphasis added) 20 C.F.R. § 416.912(e) (emphasis added).  The Commissioner argues that the record in this case was more than adequate for the ALJ to make a decision, therefore, the recontact requirement was not triggered.  Plaintiff, on the other hand, appears to argue that an ALJ is required to recontact a treating physician prior to rejecting his opinion.  As explained more fully below, the Court does not read the regulation so narrowly.

Plaintiff first saw Dr. Smith on December 4, 2001.  She presented with pain and stiffness in her neck and lower back, as well as pain, numbness, and tingling in her upper and lower extremities, after she was involved in an automobile accident.  (Tr. 187).  Upon exam, Dr. Smith noted paraspinal muscular spasm and tenderness of the cervical and lumbar spinal segments, and decreased range of motion.  (Tr. 187).  Dr. Smith diagnosed Plaintiff with acute cervical and lumbar spinal strains, and anxiety, restlessness, and insomnia.  (Tr. 187).  On December 20, 2001, Dr. Smith reviewed the results of Plaintiff's MRI scans, which revealed multilevel disc disease of the lumbar spine with small annular tear noted at the L3-S1 levels and asymmetric bilateral disc bulging with bilateral neural foraminal narrowing at the L4-L5 level.  (Tr. 185).  As a result, Dr. Smith prescribed Lortab, Xanax, Naprosyn, Ketoprofen and Lidocane; recommended a home exercise program; and restricted Plaintiff to no work or lifting.  (Tr. 185).  Aside from referring Plaintiff to a pain management clinic, Dr. Smith's subsequent treatment notes revealed little, if any, change in her condition.  (Tr. 183-84).  In fact, Plaintiff saw Dr. Smith on only two additional occasions, January 15 and February 14, 2002.  (Tr. 183-84).

Thereafter, state agency reviewers, Drs. Carlos Hernandez and James Ross, completed physical RFC assessments, limiting Plaintiff to: lifting/carrying 20 pounds occasionally, 10 pounds frequently; standing/walking and sitting 6 hours in an 8-hour workday; occasionally stooping, crawling, and reaching overhead; and never climbing ladders/ropes/scaffolds. (Tr. 162-71, 173-81). Plaintiff also underwent a consultative physical examination on June 25, 2003, by Dr. Stephen Nutter. (Tr. 210). He noted that her MRI from December 2001 revealed "mild changes of multilevel degenerative disc disease of the mid and lower lumbar spine; asymmetric at L4-5 disc bulging, which was causing bilateral foraminal narrowing; and a small annular tear at L4-5 and L5-S1 with no focal herniations or nerve root impingement." (Tr. 210). Upon exam, Dr. Nutter noted pain, tenderness, and decreased range of motion of the lumbar spine; straight leg raising was negative for radiculopathy; and deep tendon reflexes were brisk and the sensory and motor modalities were well preserved. There was no evidence of weakness or nerve root compression, nor upper motor neuron lesion. Plaintiff's grip strength and fine manipulation were well preserved bilaterally, but Dr. Nutter did note that Plaintiff was uncomfortable in the supine position and was unable to squat due to her back pain. (Tr. 213). Based upon these findings, Dr. Nutter offered the following physical capacity assessment: Plaintiff can lift/carry 25 pounds occasionally, 20 pounds frequently; she can stand/walk 6 hours total, 2 hours without interruption; she can sit 6 hours total, 3 hours without interruption; she can occasionally climb, stoop, kneel, and crawl; never balance or crouch; she can push/pull up to 35 pounds, but should avoid vibration. (Tr. 215-17).

Finally, Dr. James Templin of the Good Samaritan Pain Clinic in Lexington, Kentucky restricted Plaintiff to no lifting/carrying; standing/walking for a total of 1½ hours, 20-30

minutes without interruption; sitting for a total of 4 hours, 45-60 minutes without interruption; and never climbing, balancing, kneeling, crouching, or crawling. (Tr. 199-200). Dr. Templin also opined that Plaintiff should avoid pushing and pulling items up inclined areas or over rough and uneven terrain, as well as temperature extremes, vibration, and humidity/wetness. (Tr. 200).

The ALJ considered all of the foregoing opinions, and adopted those of the state agency reviewers and Dr. Nutter. (Tr. 18). In support, he noted the following facts: 1) Plaintiff failed to heed the advice of any of her doctors, to undergo physical therapy or injections, or start a home exercise program; 2) she had not consulted a specialist; and 3) her MRI results were modest and her exams were unremarkable. (Tr. 18). Pertinent to this appeal, the ALJ expressly rejected Dr. Smith's RFC assessment as "excessive," in light of the "mild clinical signs and modest MRI results." (Tr. 18).[2]

Under these circumstances, the Court concludes that the ALJ was not obligated to recontact Dr. Smith. In short, the record was more than adequate for the ALJ to make a reasoned decision. Moreover, much like in *Littlepage*, *see supra* note 1, the ALJ looked behind Dr. Smith's assessment to his treatment notes, and resolved any inconsistency accordingly. This is precisely what he was required to do. *See* 20 C.F.R. § 416.927(c). Finally, even if the ALJ erred by failing to contact Dr. Smith for additional information, any such error was harmless. When a claimant does not "identify and offer to present any additional evidence from [her] treating physicians showing that [she] was disabled during the relevant period," then the error is harmless. *Melton v. Comm'r of Social Security*, 178

---

[2]The Court notes that Plaintiff has not raised what is commonly referred to as the "treating physician" rule.

F.3d 1295, *5 (6th Cir. 1999) (Table decision, text available on Westlaw). Plaintiff has failed to come forward with any such evidence. Therefore, any alleged error was harmless.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 18th day of August, 2006.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-37-LemasterReginaMOO.wpd